**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

Case No. 2:25-CV-576-KCD/NPM

HYTTO PTE. LTD., and DANXIAO INFORMATION TECHNOLOGY, LTD.,

Plaintiffs/Counter-Defendants,

v.

EDDY JD OLIVARES II,

Defendant/Counter-Claimant.
________________________________________/

# SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM

Defendant/Counter-Claimant, Eddy JD Olivares II ("Defendant" or "Olivares"), pursuant to Rules 7(a)(2), 8(b), 13, and 15(a)(2) of the Federal Rules of Civil Procedure, and the Court's October 3, 2026 Order (Doc. 135), hereby submits his Second Amended Answer, Affirmative Defenses, and Counterclaims in response to Plaintiffs' Amended Verified Complaint, and alleges as follows:

## ANSWER

1. Denied.

2. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations regarding Plaintiffs' corporate structure and operations, therefore, denied.

3. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations regarding Plaintiffs' corporate structure, therefore, denied.

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted that venue is proper, otherwise, denied.

8. Admitted.

9. Admitted that Defendant was employed by one or more of the Plaintiffs, otherwise, denied.

10. Admitted.

11. Denied.

12. Admitted.

13. The agreement speaks for itself. To the extent Plaintiffs misstate, miscite, or misrepresent the content of the agreement, such allegation is denied.

14. Denied.

15. Denied.

16. Denied.

17. Denied.

18. Denied.

19. The communications speak for themselves. To the extent Plaintiffs misstate, miscite, or misrepresent the content of the communications, such allegation is denied.

20. Denied.

21. Denied.

22. Denied.

23. Denied.

24. Denied.

25. Denied.

26. Denied.

27. Denied.

28. Denied.

29. Admitted.

30. Admitted.

31. Admitted as to posting on Reddit. Denied that any such statement was false, defamatory, or otherwise actionable.

32. Admitted.

33. Admitted.

34. Admitted.

35. Admitted.

36. Admitted.

37. Admitted.

38. Admitted.

39. Admitted.

40. Admitted.

41. Denied.

42. Denied.

43. Denied.

44. Admitted.

45. Denied.

46. Admitted.

47. Admitted.

48. Admitted.

49. Denied.

50. Denied.

51. Denied.

52. Denied.

53. Denied.

54. Admitted.

55. Admitted.

56. Admitted.

57. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations regarding whether the third-party was a business partner or distributor, therefore, denied.

58. Admitted.

59. Denied.

60. Admitted.

61. Denied.

62. Denied.

63. Denied.

64. Denied.

65. Denied.

66. Denied.

67. Denied.

68. Denied.

69. Denied.

70. Denied.

71. Denied.

72. Denied.

73. Denied.

74. Denied.

75. Denied.

76. Denied.

77. Denied.

78. Denied.

79. Denied.

80. Denied.

81. Denied.

82. Denied.

83. Denied.

84. Denied.

85. Admitted.

86. Admitted as to the letter's demands, otherwise, denied.

87. Admitted as to the letter's demands, otherwise, denied.

88. Denied.

89. Denied.

90. Denied.

91. Admitted insofar as statements were published, otherwise, denied.

92. Denied.

93. Denied.

94. Denied.

95. Denied.

96. Denied.

97. Denied.

98. Denied.

99. Denied.

100. Denied.

101. Denied.

102. Denied.

103. Denied.

104. Denied.

105. Denied.

106. Denied.

107. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations regarding Plaintiffs' alleged contracts with employees, distributors, and/or business partners, therefore, denied.

108. Denied.

109. Denied.

110. Denied.

111. Denied.

112. Denied.

113. Defendant lacks sufficient knowledge or information to form a belief as to the truth of the allegations regarding Plaintiffs' alleged business relationships with customers, distributors, and/or vendors, therefore, denied.

114. Denied.

115. Denied.

116. Denied.

117. Denied.

118. Denied.

119. Denied.

120. Denied.

121. Denied.

122. Denied.

123. Denied.

124. Denied.

125. Denied.

126. Denied.

127. Denied.

128. Denied.

129. Denied.

130. Denied.

131. Denied.

132. Denied.

133. Plaintiffs do not specify which "employment agreement," therefore, denied.

134. Plaintiffs do not specify which "agreement," therefore, denied.

135. Denied.

136. Denied.

137. Denied.

138. Any allegation of Plaintiffs' operative complaint not specifically admitted hereinabove is denied.

**PRAYER FOR RELIEF**

Defendant seeks judgment in his favor against Plaintiffs, that Plaintiffs take nothing by way of their claims, that Defendant be awarded his costs of suit and attorneys' fees, and such other and further relief as the Court deems just and proper.

**AFFIRMATIVE DEFENSES**

Defendant avers and asserts the following affirmative defenses. In asserting these defenses, Defendant neither expressly nor implicitly assumes the burden of disproving any element of any claim for which Plaintiffs bear the burden of proof as a matter of law. Defendant reserves the right to assert additional affirmative defenses and any counterclaims that were either

inadvertently omitted or that become known as this action proceeds including those discovered during the course of discovery.

**Affirmative Defense No. 1: Truth**

Plaintiffs' claims are barred, in whole or in part, because the statements at issue are true or substantially true. The alleged statements concern Defendant's role, contributions, and experiences while employed by Plaintiffs, as well as his views regarding Plaintiffs' business practices, products, and industry conduct. To the extent Plaintiffs dispute certain details, any such differences are immaterial and do not alter the substance, gist, or sting of the statements. Because falsity is a required element of Plaintiffs' defamation-based claims, the absence of materially false statements defeats those claims.

**Affirmative Defense No. 2: Opinion**

The alleged statements constitute non-actionable opinion, interpretation, and/or rhetorical commentary. Many of the statements identified in the Amended Complaint, particularly those made on social media platforms and public forums, reflect Defendant's subjective views regarding product quality, business decisions, employee treatment, and his perceived role in the company. In context, a reasonable reader would not interpret such statements as objective, verifiable facts, but rather as opinion, advocacy, or personal perspective. Accordingly, such statements are not actionable.

**Affirmative Defense No. 3: No Pre-Suit Notice**

Plaintiffs' defamation and libel-based claims are barred, in whole or in part, because Plaintiffs failed to comply with the pre-suit notice requirements of Florida Statutes § 770.01 as to many of the statements alleged in the Amended Complaint. Plaintiffs' notice did not encompass numerous statements now relied upon in this action, and Plaintiffs therefore cannot recover based on those statements.

**Affirmative Defense No. 4: No Causation or Damages**

Plaintiffs cannot establish that any alleged statement by Defendant proximately caused any legally cognizable damages. The Amended Complaint relies on generalized allegations of reputational harm and speculative assertions regarding business relationships, without identifying concrete, non-speculative losses attributable to specific statements. Any alleged harm is remote, contingent, or attributable to factors other than Defendant's statements.

**Affirmative Defense No. 5: No Special Damages**

Plaintiffs' claim for business disparagement fails because Plaintiffs have not pleaded and cannot prove special damages with the specificity required under Florida law. Plaintiffs do not identify specific lost customers, transactions, or quantifiable losses attributable to any particular statement and therefore cannot recover on that claim.

**Affirmative Defense No. 6: Equitable Estoppel**

For years, Plaintiffs acknowledged Defendant's "Co-Founder" status and inventorship. Defendant relied on such acknowledgement to build his professional identity. Plaintiffs cannot now flip their position and claim those same titles are "defamatory" or "false."

**Affirmative Defense No. 7: Justification/Privilege**

Defendant's alleged statements to third parties do not constitute tortious interference because the statements were justified and/or privileged.

**Affirmative Defense No. 8: Unclean Hands**

Plaintiffs' claims are barred by the doctrine of unclean hands.

**Affirmative Defense No. 9: Lack of Standing**

To the extent Plaintiffs assert claims based on Defendant's alleged statements concerning non-party Dan Liu, Plaintiffs lack standing for such claims.

**Affirmative Defense No. 10: Statute of Limitations**

Plaintiffs' claim for breach of contract is barred by the statute of limitations.

## COUNTERCLAIM

Defendant/Counter-Claimant, Eddy JD Olivares II ("Olivares") hereby sues Plaintiff/Counter-Defendants Hytto Pte. Ltd and Danxiao Information Technology, Ltd. (collectively, "Lovense"), and alleges:

## PARTIES, JURISDICTION AND VENUE

1. Olivares is an individual residing in Fort Myers, Florida. Olivares was employed by Danxiao Information Technology, Ltd. ("Danxiao") from 2014 through 2017.

2. Upon information and belief, Hytto Pte. Ltd. ("Hytto") is a corporation organized under the laws of Singapore, with its principal place of business in Singapore, and is the owner of the Lovense brand and its related intellectual property, and has conducted substantial business in the United States, including through its former U.S. subsidiary, Hytto, Inc.

3. Upon information and belief, Danxiao is a foreign entity that, upon information and belief, operates in coordination with Hytto to develop, manufacture, and commercialize Lovense products, and has directed the conduct giving rise to the claims asserted herein.

4. Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship between the parties and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs. Additionally, there is federal-question

jurisdiction for the correction of inventorship claims asserted hereinbelow under 28 U.S.C. §§ 1331 and 1338(a) because those claims arise under the Patent Act, 35 U.S.C. § 1 et seq.

5. Personal jurisdiction is proper because Hytto and Danxiao have purposefully availed themselves of this forum, directed substantial business activities toward the United States and the State of Florida, and committed acts giving rise to these counterclaims in this forum.

6. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to these counterclaims occurred within this District and Hytto and Danxiao are subject to personal jurisdiction here. Additionally, venue is proper in this District under the correction of inventorship claims pursuant to 28 U.S.C. § 1391 and § 1400(b).

## GENERAL ALLEGATIONS

7. On or about 2014, Olivares began working for Lovense in a marketing capacity.

8. Shortly after joining Lovense, Olivares became deeply involved in the development, design, and commercialization of multiple products associated with Lovense.

9. During his tenure, Olivares contributed to the conception and development of several products and is listed as an inventor on multiple United States patents, including but not limited to U.S. Patent Nos. 9,762,515,

9,737,458, 9,889,064, and 10,051,328. Olivares was involved in the development of related design patents as well.

10. As Olivares' role expanded, Dan Liu (the CEO of Lovense), represented to Olivares that he was a founding-level contributor to the business and authorized Olivares to present himself as a "co-founder" in communications and interactions with distributors, partners, third parties, and the industry as a whole.

11. Dan Liu's representations concerning Olivares' role as a "co-founder" were made in the context of inducing Olivares to continue contributing to the growth of the company, including the development of valuable products, intellectual property, and market strategy.

12. In or around December 2015, Dan Liu, as Lovense's CEO at the company's corporate headquarters in Guangzhou, China, offered Olivares an equity arrangement, promising Olivares equity participation in the company based on Olivares' role and contributions to the company's product development, intellectual property, and other contributions.

13. Olivares relied on Dan Liu's representations that his contributions would be rewarded through equity participation in the company, and he continued to devote substantial time, effort, and intellectual contributions to the business, including contributions that formed the basis of commercially successful products and patented technologies.

14. In 2017, however, Lovense terminated Olivares' relationship with the company under what Olivares now realizes were pretextual circumstances that prevented him from realizing the total consideration used to induce his patent assignments including promised equity, long term employment, bonuses tied to product sales, co-control over the commercialization of his patented technologies, and recognition.

15. Following his departure, a dispute arose regarding Olivares' role, contributions, and rights, including his status within the company, his right to equity in the company, and his relationship to the underlying intellectual property that he had developed.

16. Lovense also communicated with third parties, including media platforms and industry participants, to alter or remove references to Olivares' role and contributions as a "co-founder."

17. These efforts included pressuring or inducing publications to modify previously published materials that accurately reflected Olivares' involvement in the company's development and success.

18. As a result of these actions, Olivares' professional reputation, particularly as an inventor and founding-level contributor in his industry, has been damaged.

19. To date, Olivares has not received any remuneration for his intellectual property and co-founder services. Olivares has also suffered

economic harm, including lost opportunities to leverage his experience, reputation, and intellectual property in connection with business ventures, licensing opportunities, and professional engagements.

20. Prior to Olivares' involvement, Lovense had no prior patents or patent strategy. Olivares initiated the patent protection strategy and personally fronted the initial filing costs of some applications to secure the brand's future, acting as a co-founder protecting company assets. While he was later reimbursed for these administrative fees, he received no remuneration for the value of the intellectual property itself.

21. The key technology (U.S. Patent No. 9,762,515) conceptualized and assigned by Olivares serves as the primary driver of consumer demand for the Lovense brand. This technology facilitates a massive global ecosystem, integrated with thousands of daily live-streams that serve as the brand's primary marketing engine, creating an incredibly lucrative market value for the products that is inextricably linked to Olivares' foundational intellectual property.

22. More particularly, prior to Olivares' involvement, Lovense's software team was focused on creating their own adult cam site where Lovense products would be exclusively interactive and controllable via their own platform/website. Olivares conceptualized the idea of having the hardware

work with as many third-party cam sites as possible, specifically to work in "public" cam rooms on cam sites and vibrate based on tipped amounts.

23. In addition to conceiving of this idea, Olivares was directly involved in overseeing its reduction to practice by the Lovense software development team. Once developed, Olivares further was directly involved in its commercial launch, and the technology was commercially successful. In recognition of this success, Lovense subsequently pivoted its software development team away from their original "closed ecosystem" approach to the successful system that Olivares invented and that works with third-party cam sites.

24. U.S. Patent No. 9,762,515 was the first patent to contain claims covering two key functions for interacting with third-party cam sites: (a) Tip Based Vibrations, a system whereby a cam model can adjust a user interface to make certain tip amounts on adult cam websites activate their sex toy, the two adjustable parameters being intensity and duration; and (b) Link For Live Control, a system where a unique link can be generated to give one or more tippers live control of a sex toy via a control panel pop-up.

25. Additionally, Olivares is the true inventor of one of Lovense's most commercially successful product designs. "Lush" is a Lovense product within the wearable egg vibrator category, and the commercial application of U.S. Patent No. D792,980. Prior to Olivares, Lovense had initially developed a

prototype for "Lush," but the prototype was merely typical for the "egg vibrator" category in that tip consisted of all sides curving inward at the same degree, like an egg shape. It also had a tail which curled into itself and whose function was typical of other egg vibrators, i.e. a way to pull out the product.

26. After seeing this Lush prototype, Olivares designed an improved, non-traditional "egg" shape where there was a distinct curve at the top of the "egg" along with a thicker and longer tail.

27. Olivares' improvements to the design of Lush are embodied in U.S. Patent No. D792,980, and Lush was a commercial application of U.S. Patent No. D792,980.

28. Subsequent to Olivares' employment with Lovense, Lovense sought to obtain, and did obtain, various additional U.S. patents (other than U.S. Patent No. 9,762,515 and U.S. Patent No. D792,980) which were based, in whole or in part, on the inventive contributions made by Olivares when he was at the company. However, Lovense failed to list Olivares as an inventor on these patents, in violation of U.S. patent law. Olivares is entitled to be listed as an inventor on these other patents, and to the resulting ownership benefits that flow from his proper status as an inventor.

## COUNT I: CORRECTION OF INVENTORSHIP (U.S. PATENT NO. 11,737,948)

29. Olivares reincorporates and realleges paragraphs 1 - 28 as if fully set forth herein.

30. Olivares is an actual co-inventor of U.S. Patent No. 11,737,948, a true and correct copy of which is attached hereto as Exhibit A.

31. U.S. Patent No. 11,737,948 includes claims which describe and/or incorporate the "link for live control" system of a sex toy which, as described above, was invented by Olivares, including the following: Claim 1, including without limitation the stimulation device, memory device, and processor functionality elements thereof; Claims 2-7, which are dependent on Claim 1; Claim 8, including without limitation the receiving and initiating steps thereof; Claim 16, including without limitation the stimulation device memory device, and processor functionality elements thereof; and Claims 17-18, which are dependent on Claim 16.

32. The assignee of U.S. Patent No. 11,737,948, Hytto, knew or should have known of Olivares' contribution to the patent.

33. The omission of Olivares as a named inventor is not the result of any deceptive intent on his part.

34. Olivares has suffered financial and reputational harm due to the omission.

35. Under 35 U.S.C. § 256, this Court has the authority to order the Director of the USPTO to issue a certificate of correction changing the inventorship of U.S. Patent No. 11,737,948.

**COUNT II: CORRECTION OF INVENTORSHIP (U.S. PATENT NO. 12,318,340)**

36. Olivares reincorporates and realleges paragraphs 1 - 28 as if fully set forth herein.

37. Olivares is an actual inventor of U.S. Patent No. 12,318,340, a true and correct copy of which is attached hereto as Exhibit B.

38. U.S. Patent No. 12,318,340 includes claims which describe and/or incorporate the "link for live control" system of a sex toy which, as described above, was invented by Olivares, including the following: Claims 1-6, 8-12, 14-15, 17-18, and 20, including without limitation all elements or (as applicable) steps thereof.

39. The assignee of U.S. Patent No. 12,318,340, Hytto, knew or should have known of Olivares' contribution to the patent.

40. The omission of Olivares as a named inventor is not the result of any deceptive intent on his part.

41. Olivares has suffered financial and reputational harm due to the omission.

42. Under 35 U.S.C. § 256, this Court has the authority to order the Director of the USPTO to issue a certificate of correction changing the inventorship of U.S. Patent No. 12,318,340.

**COUNT III: CORRECTION OF INVENTORSHIP (U.S. PATENT NO. 12,539,248)**

43. Olivares reincorporates and realleges paragraphs 1 - 28 as if fully set forth herein.

44. Olivares is an actual inventor of U.S. Patent No. 12,539,248, a true and correct copy of which is attached hereto as Exhibit C.

45. U.S. Patent No. 12,539,248 includes claims which describe and/or incorporate the "link for live control" system of a sex toy which, as described above, was invented by Olivares, including the following: Claim 1, including without limitation the stimulation device, processor functionality, and user interface functionality elements thereof; Claim 4, including all elements thereof; Claim 8, including without limitation the control link and stimulation device functionality as well as the establishing step, the activating and displaying step, and the receiving steps.

46. The assignee of U.S. Patent No. 12,539,248, Hytto, knew or should have known of Olivares' contribution to the patent.

47. The omission of Olivares as a named inventor is not the result of any deceptive intent on his part.

48. Olivares has suffered financial and reputational harm due to the omission.

49. Under 35 U.S.C. § 256, this Court has the authority to order the Director of the USPTO to issue a certificate of correction changing the inventorship of U.S. Patent No. 12,539,248.

**COUNT IV: CORRECTION OF INVENTORSHIP**
**(U.S. PATENT NO. D1,047,209)**

50. Olivares reincorporates and realleges paragraphs 1 - 28 as if fully set forth herein.

51. Olivares is an actual inventor of U.S. Patent No. D1,047,209, a true and correct copy of which is attached as Exhibit D.

52. U.S. Patent No. D1,047,209 claims a design which incorporates the top of the body and tail which, as described above, was invented by Olivares. Indeed, the design claimed by U.S. Patent No. D1,047,209 contains the exact distinct curve and displays a long thick tail invented by Olivares.

53. The assignee of U.S. Patent No. D1,047,209, Hytto, knew or should have known of Olivares' contribution to the patent.

54. The omission of Olivares as a named inventor is not the result of any deceptive intent on his part.

55. Olivares has suffered financial and reputational harm due to the omission.

56. Under 35 U.S.C. § 256, this Court has the authority to order the Director of the USPTO to issue a certificate of correction changing the inventorship of U.S. Patent No. D1,047,209.

## COUNT V: CORRECTION OF INVENTORSHIP (U.S. PATENT NO. D948,069)

57. Olivares reincorporates and realleges paragraphs 1 - 28 as if fully set forth herein.

58. Olivares is an actual inventor of U.S. Patent No. D948,069, a true and correct copy of which is attached as Exhibit E.

59. U.S. Patent No. D948,069 claims a design which incorporates the top of the body and tail which, as described above, was invented by Olivares. Indeed, the design claimed by U.S. Patent No. D1,047,209 contains the exact distinct curve and displays a long thick tail invented by Olivares.

60. The assignee of U.S. Patent No. D948,069, Danxiao, knew or should have known of Olivares' contribution to the patent.

61. The omission of Olivares as a named inventor is not the result of any deceptive intent on his part.

62. Olivares has suffered financial and reputational harm due to the omission.

63. Under 35 U.S.C. § 256, this Court has the authority to order the Director of the USPTO to issue a certificate of correction changing the inventorship of U.S. Patent No. D948,069.

## COUNT VI: DEFAMATION PER SE

64. Olivares reincorporates and realleges paragraphs 1 through 28 as if fully set forth herein.

65. On January 24, 2025, Lovense, through its legal counsel, published a written communication concerning Olivares to Reddit's legal team.

66. In that communication, Lovense accused Olivares of making false, misleading, and defamatory statements about the company, disclosing confidential information, and engaging in other allegedly unlawful conduct.

67. Lovense further stated that Olivares' actions were "in direct violation of applicable laws, including but not limited to" the Defend Trade Secrets Act, state anti-harassment and anti-defamation laws, and the Hobbs Act, 18 U.S.C. § 1951.

68. The Hobbs Act is a federal criminal statute prohibiting, among other things, robbery and extortion affecting interstate commerce. By expressly asserting Olivares' alleged conduct as a violation of the Hobbs Act, Lovense accused Olivares of engaging in conduct constituting a federal criminal offense.

69. Lovense's accusation was false. Olivares did not engage in conduct constituting a violation of the Hobbs Act or commit the criminal offense attributed to him in the communication.

70. Lovense's accusation was presented as an assertion that Olivares had violated federal criminal law, rather than merely an expression of opinion or subjective criticism. The accusation conveyed a factual assertion concerning Olivares's conduct that was capable of being proven true or false.

71. Lovense's statement constitutes defamation per se under Florida law because it falsely attributed the commission of a serious criminal offense to Olivares. The defamatory character of the accusation was apparent from the communication itself, without resort to extrinsic facts, explanation, or innuendo.

72. Lovense knew that its accusation was false or acted with reckless disregard for its truth or falsity. Alternatively, Lovense failed to exercise reasonable care in determining the truth or falsity of the accusation before communicating it to Reddit.

73. In the same communication, Lovense requested that Reddit remove Olivares's posts, prohibit him from publishing further content, and suspend or ban his account.

74. Following Lovense's publication, Reddit removed Olivares from its platform.

75. By falsely accusing Olivares of violating federal criminal law, Lovense subjected him to distrust, contempt, and disgrace and damaged his reputation and professional credibility.

76. As a direct and proximate result of Lovense's defamatory publication, Olivares suffered reputational harm and other damages, including harm arising from his removal from Reddit, in an amount to be proven at trial.

## COUNT VII: DEFAMATION BY IMPLICATION

77. Olivares reincorporates and realleges paragraphs 1 through 28 as if fully set forth herein.

78. Between November 2024 and January 2025, Lovense communicated to YNOTCAM, an online industry publication, that Olivares was not a "co-founder" of Lovense.

79. Before Lovense's communication, YNOTCAM had published an article identifying Olivares as a "co-founder" of Lovense. Following Lovense's communication, YNOTCAM removed references to Olivares as a "co-founder" from the article.

80. Lovense's communication omitted material facts concerning Olivares's relationship with the company. Specifically, Lovense's CEO, Dan Liu, had previously represented to Olivares that he was a founding-level contributor to the company and had expressly authorized him to identify

himself as a "co-founder" in communications with distributors, business partners, and other industry participants.

81. Olivares had also made substantial contributions to the development, design, and commercialization of Lovense's products and intellectual property, which formed the basis for Lovense's prior recognition of his founding-level role.

82. By communicating to YNOTCAM that Olivares was not a "co-founder," without disclosing that its own CEO had previously authorized Olivares to use that designation, Lovense created the false and defamatory implication that Olivares had knowingly and dishonestly misrepresented his professional status and relationship with the company.

83. That implication was false. Olivares had represented himself as a "co-founder" with Dan Liu's express authorization and in reliance on Lovense's representations concerning his role and contributions to the company. Accordingly, Olivares had not knowingly or dishonestly misrepresented his professional status by using that designation.

84. Lovense knew that the defamatory implication was false because its CEO had previously authorized Olivares to identify himself as a "co-founder." Nevertheless, Lovense communicated its denial of Olivares's co-founder status to YNOTCAM without disclosing that authorization or the circumstances under which Olivares had used the designation.

85. Lovense published the communication with knowledge of the falsity of the defamatory implication or reckless disregard for its truth or falsity. Alternatively, Lovense failed to exercise reasonable care in determining whether its communication would convey a false and defamatory impression concerning Olivares.

86. The defamatory implication that Olivares had dishonestly misrepresented his professional status was reasonably capable of being understood by YNOTCAM and its readers and tended to expose Olivares to distrust, contempt, and ridicule and to prejudice him in his profession and industry.

87. As a direct and proximate result of Lovense's defamatory communication and the resulting false implication, Olivares has suffered damage to his reputation, professional credibility, and standing within the industry, as well as other damages in an amount to be proven at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Olivares seeks judgment:

(a) ordering that Olivares be listed as an inventor on U.S. Patent No. 11,737,948; U.S. Patent No. 12,318,340; U.S. Patent No. 12,539,248; U.S. Patent No. D1,047,209; and U.S. Patent No. D948,069.

(b) ordering the Director of the USPTO to issue certificates of correction changing the inventorship of U.S. Patent No. 11,737,948; U.S. Patent No.

12,318,340; U.S. Patent No. 12,539,248; U.S. Patent No. D1,047,209; and U.S. Patent No. D948,069.

(c) ordering an accounting and the imposition of a constructive trust over the total revenue derived by Lovense from any products utilizing the Lovense patents for which Olivares was omitted as a co-inventor;

(d) awarding disgorgement of all profits derived by Lovense from the use of patents for which Olivares was omitted as a co-inventor;

(e) awarding compensatory damages in an amount to be proven at trial;

(f) awarding punitive damages;

(g) awarding reasonable attorneys' fees and costs; and

(h) awarding such other and further relief the Court deems just and proper.

**JURY TRIAL DEMAND**

Olivares demands a trial by jury on all issues so triable.

Dated: October 19, 2026

Respectfully submitted,

By: *<u>/s/John C. Carey</u>*
John C. Carey (FBN 78379)
Email: jcarey@careyrodriguez.com
Ethan B. Rodriguez (FBN 1036022)
Email: erodriguez@careyrodriguez.com
**CAREY RODRIGUEZ LLP**
121 Alhambra Plaza, Suite 1000
Coral Gables, Florida 33134
Tel: (305) 356-5455
Fax: (305) 372-7475