**UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

– – – – – – – – – – – – – – – – – – – – – – – – – – – – X

Hytto Pte. Ltd. and Danxiao Information Technology Ltd.,

Plaintiffs/Counter-Defendants,

against

Eddy JD Olivares II,

Defendant/Counter-Claimant.

Case No.: 2:25-CV-00576-KCD-NPM

– – – – – – – – – – – – – – – – – – – – – – – – – – – – X

**COUNTER-DEFENDANTS' MOTION TO DISMISS COUNTS I THROUGH V OF THE SECOND AMENDED COUNTERCLAIM (DOC. 138) AND PRAYER FOR RELIEF (c)–(d) WITH PREJUDICE OR ALTERNATIVELY, TO STRIKE PRAYER FOR RELIEF (c)–(d), AND INCORPORATED MEMORANDUM OF LAW**

Plaintiffs/Counter-Defendants Hytto Pte. Ltd. ("Hytto") and Danxiao Information Technology, Ltd. ("Danxiao") (together, "Lovense"), pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(6), *Foman v. Davis*, 371 U.S. 178 (1962) (as to dismissal with prejudice), and Local Rule 3.01(a), move to dismiss with prejudice Counts I through V of the Second Amended Answer, Affirmative Defenses and Counterclaim (Doc. 138) (the "Second Amended Counterclaim" or

"SAC") filed by Defendant/Counter-Claimant Eddy JD Olivares II ("Olivares"), together with the accounting, constructive-trust, and disgorgement relief demanded in paragraphs (c) and (d) of the prayer for relief.[1] Alternatively, Lovense moves to strike paragraphs (c) and (d) of the prayer for relief. In support, Lovense states as follows.

## INTRODUCTION

This is Olivares's third counseled attempt to plead that he is an omitted "inventor" of five Lovense patents. The Court dismissed the prior versions of these claims because Olivares's allegations "merely list the patent number without providing any description as what the actual invention is" and left "the Court guessing as to what the invention even was." (Doc. 135 at 11–12.) The Second Amended Counterclaim does not cure that defect. Its claim-by-claim inventorship allegations are copied word for word from the pleading the Court dismissed, and its new allegations confirm that the defect cannot be cured.

[1]Lovense does not move against Counts VI and VII of the Second Amended Counterclaim in this motion. Consistent with the practice in this Circuit, Lovense will answer the Second Amended Counterclaim, including Counts VI and VII, after the Court rules on this motion. *See* Fed. R. Civ. P. 12(a)(4)(A); *Oliveras v. Liberty Mut. Fire Ins. Co.*, No. 6:25-CV-2144-JA-NWH, 2026 WL 353057, at *1 (M.D. Fla. Feb. 9, 2026) *quoting Jacques v. First Liberty Ins. Corp.*, No. 8:16-CV-1240-T-23TBM, 2016 WL 3221082, at *1 (M.D. Fla. June 9, 2016) ("a majority of federal courts have determined that a Rule 12(b) motion to dismiss tolls the time for a defendant to answer, even when not all the counts in the complaint are the subject of the Rule 12(b) motion to dismiss.") *citing Beaulieu v. Bd. of Trs. of Univ. of W. Fla., No. 3:07-cv-30-RVEMT*, 2007 WL 2020161, at *2 (N.D. Fla. July 9, 2007) (collecting cases).

Olivares's employment with Lovense ended in 2017. (SAC ¶¶ 1, 14.) Every patent he challenges was filed years later, between April 2021 and August 2024 (*see*, chart, page 6, *supra)*, by named inventors with whom Olivares does not allege a single communication about the claimed inventions. (Docs. 139-1 to 139-5.) The only "contribution" he identifies is the "subject matter" of two earlier Lovense patents on which he is a named co-inventor, U.S. Patent No. 9,762,515 (the "'515 patent") and U.S. Design Patent No. D792,980 (the "D'980 patent"), both of which issued in 2017 and are cited on the face of the very patents he attached to his pleading. (SAC ¶¶ 24–28, 31, 38, 45, 52, 59; Docs. 139-1 to 139-5.) Under settled Federal Circuit law, a person who did not collaborate with the named inventors, and whose only alleged input is information already publicly disclosed, is not a joint inventor. Nor does listing claim numbers alongside generic elements such as a "processor" and a "memory device," or describing the "top of the body and tail" of a product, plead a contribution to the conception of any claimed invention.

Because the dispositive facts, namely Olivares's 2017 departure, the 2017 issuance of the '515 patent and D'980 patent, and the later filing dates (2021-2024) of the challenged patents, are fixed and appear on the face of Olivares's own pleading and exhibits, further amendment would be futile. Counts I through V should be dismissed with prejudice. And because 35 U.S.C. § 256 authorizes only

the correction of inventorship, the equitable monetary relief demanded in prayer (c)–(d) should be dismissed or stricken as well.

## BACKGROUND

### A. Procedural History

Lovense filed this action asserting claims arising from Olivares's unlawful campaign of defamation, business disparagement, tortious interference, and deceptive trade practices, among other claims. Olivares answered and asserted counterclaims, including claims for correction of inventorship of the same five patents, which he repleaded as Counts II through VI of his Amended Counterclaims (Doc. 124). Lovense moved to dismiss the Amended Counterclaims, arguing among other things that the inventorship counts merely listed claim numbers and recited claim elements without describing "what inventive concept he conceived, when or how he conceived it, or how his alleged contribution is reflected in the claims of each patent." (Doc. 130 at 11–15.) On October 3, 2026, the Court agreed, dismissing the inventorship counts without prejudice for failure to state a claim; it also dismissed the fraudulent-inducement count with prejudice as time-barred and dismissed the defamation count except as to the alleged statement to Reddit. (Doc. 135 at 3–5, 9–12, 15.) The Court permitted Olivares to file an amended counterclaim within fourteen days. (*Id*. at 15.) Olivares filed the Second Amended Counterclaim on October 19, 2026 (Doc.

138), and on October 20, 2026, he refiled Exhibits A through E because the exhibits initially filed were "inadvertently incomplete" (Doc. 139).

B. **Olivares's Allegations**

Olivares alleges that he was employed by Danxiao "from 2014 through 2017" and that his employment ended in 2017. (SAC ¶¶ 1, 14.) He alleges that he is a named inventor on several Lovense patents, including the '515 patent. (*Id.* ¶ 9.) He alleges that he "conceptualized the idea of having the hardware work with as many third-party cam sites as possible," and that the '515 patent "was the first patent to contain claims covering" two functions: "Tip Based Vibrations" and "Link For Live Control." (*Id.* ¶¶ 22, 24.) As to design, he alleges that Lovense "had initially developed a prototype for 'Lush'" before his involvement, and that he then designed "a distinct curve at the top of the 'egg' along with a thicker and longer tail," which he alleges are "embodied in" the D'980 patent. (*Id.* ¶¶ 25–27.)

Olivares then alleges, in a single paragraph, that "[s]ubsequent to Olivares' employment with Lovense," Lovense obtained "various additional U.S. patents (other than U.S. Patent No. 9,762,515 and U.S. Patent No. D792,980) which were based, in whole or in part, on the inventive contributions made by Olivares when he was at the company." (*Id.* ¶ 28.) Counts I through III allege that three utility patents "include[] claims which describe and/or incorporate the 'link for live control' system of a sex toy which, as described above, was invented by Olivares,"

followed by a list of claim numbers and generic claim elements. (*Id.* ¶¶ 31, 38, 45.) Counts IV and V allege that two design patents "incorporate[] the top of the body and tail which, as described above, was invented by Olivares." (*Id.* ¶¶ 52, 59.) The Second Amended Counterclaim does not allege that Olivares communicated with any named inventor of any challenged patent about any claimed invention, or that he did anything at all after his employment ended in 2017.

### C. The Challenged Patents

The face pages of the patents Olivares attached establish the following:[2]

| Patent (Count) | Filed | Issued | Named Inventors | Related Application Data | Earlier Patent or Publication Cited on Face |
|---|---|---|---|---|---|
| 11,737,948 (I) | Apr. 6, 2022 | Aug. 29, 2023 | Jilin Qiu; Dan Liu | None shown | '515 patent; WO 2017/189017 |
| 12,539,248 (III) | July 12, 2023 | Feb. 3, 2026 | Jilin Qiu; Dan Liu | Continuation of Appl. No. 17/714,278 (Apr. 6, 2022); CIP of Appl. No. 18/048,817 (Oct. 21, 2022) | '515 patent; WO 2017/189017 |

[2]The challenged patents are attached to and incorporated in the Second Amended Counterclaim, Fed. R. Civ. P. 10(c), and, as records of the United States Patent and Trademark Office, are also proper subjects of judicial notice. Fed. R. Evid. 201(b).

| Patent (Count) | Filed | Issued | Named Inventors | Related Application Data | Earlier Patent or Publication Cited on Face |
|---|---|---|---|---|---|
| 12,318,340 (II) | Aug. 15, 2024 | June 3, 2025 | Jilin Qiu; Dan Liu | Continuation of Appl. No. 18/351,390 (July 12, 2023), a continuation of Appl. No. 17/714,278 (Apr. 6, 2022) | ’515 patent; WO 2017/189017 |
| D1,047,209 (IV) | Jan. 22, 2024 | Oct. 15, 2024 | Dan Liu; Jilin Qiu | None shown | D’980 patent |
| D948,069 (V) | Apr. 26, 2021 | Apr. 5, 2022 | Dan Liu | None shown | D’980 patent |

(Doc. 139-1 at 2; Doc. 139-2 at 2; Doc. 139-3 at 2; Doc. 139-4 at 2–3; Doc. 139-5 at 2.)

None of the challenged patents claim priority to the ’515 patent or the D’980 patent. The ’515 patent issued on September 12, 2017, and the D’980 patent issued on July 25, 2017. (*See* Doc. 139-1 at 2 (citing “9,762,515 B1 9/2017 Olivares et al.”); Doc. 139-4 at 2 (citing “D792,980 S 7/2017 Olivares et al.”); Doc. 139-5 at 2 (citing “D792,980 S * 7/2017 Olivares”).)

## LEGAL STANDARD

To survive a motion to dismiss, a pleading “must contain sufficient factual matter, accepted as true, to ‘state a claim to relief that is plausible on its face.’” *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). “Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id.* Exhibits attached to a pleading are part of it for all purposes, Fed. R. Civ. P. 10(c), and "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Crenshaw v. Lister*, 556 F.3d 1283, 1292 (11th Cir. 2009) (quotation omitted).

Section 256 permits a court to "order correction of the patent on notice and hearing of all parties concerned." 35 U.S.C. § 256(b). The named inventors are presumed correct, and a party seeking to add an inventor must ultimately prove joint inventorship by clear and convincing evidence. *Eli Lilly & Co. v. Aradigm Corp.*, 376 F.3d 1352, 1358 (Fed. Cir. 2004); *Pannu v. Iolab Corp.*, 155 F.3d 1344, 1349 (Fed. Cir. 1998); (Doc. 135 at 10). At the pleading stage, a putative inventor must allege facts showing that he "contribut[ed] to the conception of the claimed invention" in a significant way when "measured against the dimension of the full invention," which requires "more than explaining to the inventors what the state of the art was." (Doc. 135 at 10–11 (quoting *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997), and *Hess v. Advanced Cardiovascular Sys., Inc.*, 106 F.3d 976, 981 (Fed. Cir. 1997)).) As this Court has held, "[t]he onus thus falls on purported inventors to specifically allege what he brought to the table, how it tied into the overall patent, and why it was important." (*Id.* at 11 (citing *Blue Gentian, LLC v. Tristar Prods., Inc.*, 70 F.4th 1351, 1358 (Fed. Cir. 2023)).) Conception requires

"a definite and permanent idea of the complete and operative invention," meaning "a specific, settled idea, a particular solution to the problem at hand, not just a general goal or research plan." *Burroughs Wellcome Co. v. Barr Lab'ys, Inc.*, 40 F.3d 1223, 1227–28 (Fed. Cir. 1994).

A putative joint inventor must (1) contribute in some significant manner to the conception of the invention, (2) make a contribution that is not insignificant in quality when measured against the dimension of the full invention, and (3) do more than merely explain well-known concepts or the current state of the art. *Pannu*, 155 F.3d at 1351; *HIP, Inc. v. Hormel Foods Corp.*, 66 F.4th 1346, 1350 (Fed. Cir. 2023). Joint inventorship also requires collaboration. Although 35 U.S.C. § 116(a) provides that joint inventors need not "physically work together or at the same time," it does not eliminate the requirement of collaboration: "[i]ndividuals cannot be joint inventors if they are completely ignorant of what each other has done until years after their individual independent efforts." *Kimberly-Clark Corp. v. Procter & Gamble Distrib. Co.*, 973 F.2d 911, 916–17 (Fed. Cir. 1992); *see also Eli Lilly*, 376 F.3d at 1359 (joint inventors must have "some open line of communication during or in temporal proximity to their inventive efforts"); *Vanderbilt Univ. v. ICOS Corp.*, 601 F.3d 1297, 1303 (Fed. Cir. 2010) ("the interplay between conception and collaboration requires that each co-inventor engage with the other co-inventors to contribute to a joint conception").

## ARGUMENT

### I. Counts I Through III Fail to State a Claim for Correction of Inventorship of the ’948, ’340, and ’248 Patents.

#### A. Olivares Pleads No Collaboration With the Named Inventors.

The Second Amended Counterclaim fails at the threshold because it pleads no collaboration of any kind. Joint inventorship arises only “[w]hen an invention is made by two or more persons jointly.” 35 U.S.C. § 116(a). That statutory requirement demands collaboration, that is, joint effort by the putative inventor and the named inventors toward the conception of the claimed invention. *Fina Oil*, 123 F.3d at 1473; *Kimberly-Clark*, 973 F.2d at 916–17. Olivares alleges that his employment ended in 2017. (SAC ¶¶ 1, 14.) The ’948 patent was filed on April 6, 2022, roughly five years later, and claims no earlier priority; the ’340 and ’248 patents descend from the ’948 application and were filed in 2024 and 2023, respectively, and the ’248 patent’s additional continuation-in-part lineage traces, at the very earliest, to October 2022. (Doc. 139-1 at 2; Doc. 139-2 at 2; Doc. 139-3 at 2.) Every one of those dates postdates Olivares’s 2017 departure. The named inventors of these three patents are Jilin Qiu and Dan Liu. (*Id.*) Olivares does not allege that he ever communicated with Mr. Qiu about anything, <u>or that</u> he communicated with either named inventor about the subject matter of these patents, <u>or that</u> he had any involvement in their conception. Nor does he allege that the named inventors conceived the claimed inventions while he was still at

the company. To the contrary, his theory is expressly self-limited to non-cognizable allegations that Lovense obtained these patents "[s]ubsequent to Olivares' employment" based on "contributions made by Olivares when he was at the company." (SAC ¶ 28.)

That theory describes the opposite of joint inventorship. A person whose work ended years before the named inventors began theirs, and who alleges no "open line of communication" with them about the claimed invention, *Eli Lilly*, 376 F.3d at 1359, is "completely ignorant of what [the others have] done until years after [his] individual independent efforts." *Kimberly-Clark*, 973 F.2d at 917. "[T]he interplay between conception and collaboration requires that each co-inventor engage with the other co-inventors to contribute to a joint conception." *Vanderbilt*, 601 F.3d at 1303. Olivares alleges no engagement with Mr. Qiu or Mr. Liu about the '948, '340, or '248 inventions at any time, let alone during their conception. His theory is instead that the '948 patent's "control link" derives from the "Link For Live Control" claimed in his own 2017 '515 patent. (SAC ¶¶ 24, 31; Doc. 139-1 at 2.) But a later improvement developed by others on the basis of an earlier, published invention is not a joint invention with the earlier inventor; it is a separate invention that builds on the prior art. Federal courts dismiss § 256 claims at the pleading stage for precisely this failure. *See Blackhawk Network Inc. v. SL Card Co.*, 589 F. Supp. 3d 1115, 1126–27 (D. Ariz. 2022) (dismissing § 256 claim under Rule

12 and holding that the failure to plead collaboration between putative inventors and named inventors itself provides sufficient grounds to dismiss the Complaint.) The same result is required here. In addition, as this is Olivares' third failure to plead a valid claim in this case, these counts should be dismissed with prejudice.

### B. The Only Contribution Olivares Identifies Is Prior Art Cited on the Face of the Challenged Patents.

Olivares's only alleged contribution to the '948, '340, and '248 patents is the "Link For Live Control" function that he says the '515 patent "was the first patent to contain claims covering." (SAC ¶¶ 24, 31, 38, 45.) The '515 patent issued on September 12, 2017, and it, along with Olivares's related WIPO publication, is cited on the face of all three challenged patents. (Doc. 139-1 at 2; Doc. 139-2 at 2; Doc. 139-3 at 2.) None of the challenged patents claims priority to the '515 patent. (*Id.*)

"A contribution of information in the prior art cannot give rise to joint inventorship because it is not a contribution to conception." *Eli Lilly*, 376 F.3d at 1362. That principle is dispositive here. The '515 patent is listed among the "References Cited" on the face of the '948 patent and on each of its descendants, including the '340 and '248 patents. (Doc. 139-1 at 2; Doc. 139-2 at 2; Doc. 139-3 at 2.) Each of those patents therefore issued over the '515 patent, as Olivares's own exhibits show. The subject matter Olivares identifies as his contribution, the '515 patent's "Link For Live Control" (SAC ¶¶ 24, 31, 38, 45), is by definition not what made the later claims patentable. An inventor of prior art does not, by virtue of

that earlier work alone, become a joint inventor of later improvements conceived by others. Thus, an element that "was in the prior art" and whose inclusion in a later claim was "merely the basic exercise of ordinary skill in the art" is an insignificant contribution as a matter of law. *Nartron Corp. v. Schukra U.S.A., Inc.*, 558 F.3d 1352, 1356–58 (Fed. Cir. 2009). Here, Olivares does not allege that he conceived anything new in combination with the named inventors; he alleges only that later patents "describe and/or incorporate" what the ′515 patent already disclosed. (SAC ¶¶ 31, 38, 45.) What was already in the prior art may contribute to a later joint invention only through collaboration with the named inventors on the new combination actually claimed, and, as shown above, Olivares alleges no collaboration at all. Absent collaboration, the subject matter of a published patent is simply part of the information available to any later inventor. It is not a contribution to the conception of the later, distinct inventions that the Patent Office examined and allowed as a separate patent parallel to the ′515 patent. What Olivares identifies is not a contribution to conception and therefore, his claims should be dismissed.

### C. Olivares Pleads No Contribution to the Inventive Features of Any Claimed Invention.

Independently, Counts I through III fail because Olivares does not identify what he contributed to the conception of any claim, or when, how, or with whom he did so. Rather than identifying any inventive feature, each count lists claim

numbers and the most generic of claim elements. Count I invokes the "stimulation device, memory device, and processor functionality elements" of claims 1 and 16 and the "receiving and initiating steps" of claim 8. (SAC ¶ 31.) Count II invokes "Claims 1-6, 8-12, 14-15, 17-18, and 20, including without limitation all elements or (as applicable) steps thereof." (*Id.* ¶ 38.) Count III invokes the "stimulation device, processor functionality, and user interface functionality elements" of claim 1, "all elements" of claim 4, and the "control link," "establishing," "activating and displaying," and "receiving" steps of claim 8. (*Id.* ¶ 45.)

Those allegations do not plead a contribution to conception. To plead joint inventorship of a later patent, a claimant must allege a contribution to the features that made the claimed invention patentable, not merely to elements that were generic, well known, or already disclosed in the prior art. *See HIP*, 66 F.4th at 1353 (reversing joint-inventorship determination where the putative inventor's contribution was insignificant when measured against the dimension of the full invention); *Pannu*, 155 F.3d at 1351. Generic elements such as a processor, a memory device, a user interface, and receiving and initiating steps are the basic building blocks of any networked device, and contributing them, or "explain[ing]… well-known concepts and/or the current state of the art," is not a contribution to conception. *Pannu*, 155 F.3d at 1351. The Second Amended Counterclaim identifies nothing more. For the '948 patent, Olivares points only to

"the stimulation device, memory device, and processor functionality elements" of claims 1 and 16 and "the receiving and initiating steps" of claim 8. (SAC ¶ 31.) For the ′248 patent, he points to "the stimulation device, processor functionality, and user interface functionality elements" of claim 1, "all elements" of claim 4, and, for claim 8, "the control link and stimulation device functionality as well as the establishing step, the activating and displaying step, and the receiving steps." (*Id.* ¶ 45.) For the ′340 patent, he identifies no element at all, alleging only that sixteen claims are implicated "including without limitation all elements or (as applicable) steps thereof." (*Id.* ¶ 38.) Those allegations recite the generic components of any remotely controlled device, and the one non-generic item, the "control link," is the ′515 subject matter discussed above. The Second Amended Counterclaim does not allege that any listed element is the inventive step that rendered the later claims patentable, what Olivares conceived about that element, or when and with whom he conceived it. Meanwhile, the claims Olivares cites require specific features he never claims to have conceived. Claim 1 of the ′948 patent, for example, requires posting the control link to a social platform, receiving a request for a real-time connection when a user accesses the link, and a control user interface that displays and permits the local operator to transmit textual messages, audio files, still images, or video. (Doc. 139-1 at 16.) Claim 1 of the ′340 patent requires establishing a local connection through an installed application, requesting and receiving a

server-generated and server-hosted control link, establishing a real-time connection after the link is relayed, and obtaining an activation command from the hosting server. (Doc. 139-2 at 16.) Claim 1 of the ’248 patent requires, among other things, sending a live control request to a local creator and displaying the control user interface and interactive interface simultaneously, and claims 8 and 12 further require causing the device to perform multiple user actions in a synchronized manner. (Doc. 139-3 at 16–17.) Olivares does not allege that he conceived any of these limitations.

Nor does the pleading’s narrative supply what the counts omit. Paragraphs 21 through 24 concern the ’515 patent, on which Olivares and Mr. Liu are named co-inventors; they say nothing about the claims of the ’948, ’340, or ’248 patents. (SAC ¶¶ 21–24.) Counts I through III then assert that the challenged claims incorporate the “link for live control” system “which, as described above, was invented by Olivares” (*Id.* ¶¶ 31, 38, 45), but that cross-reference adds nothing about the claims of the later patents. The Second Amended Counterclaim says nothing about when or how Olivares contributed to any identified claim. This is the same gap the Court identified in dismissing the prior pleading, where Olivares did not “explain how those claims or contributions were vital to the inventions’ creations” (Doc. 135 at 11), and the Second Amended Counterclaim leaves it unfilled. Olivares previously assured the Court that this detail would come in

discovery (Doc. 133), but Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79.

### II. Counts IV and V Fail to State a Claim for Correction of Inventorship of the D'209 and D'069 Design Patents.

The same inventorship principles govern design patents. *Hoop v. Hoop*, 279 F.3d 1004, 1007 (Fed. Cir. 2002). Counts IV and V fail for the same reasons as Counts I through III, and for additional reasons apparent from Olivares's own allegations and exhibits.

First, Olivares pleads no collaboration. U.S. Design Patent No. D948,069 (the "D'069 patent") was filed on April 26, 2021, and names Dan Liu as its sole inventor. (Doc. 139-5 at 2.) U.S. Design Patent No. D1,047,209 (the "D'209 patent") was filed on January 22, 2024, and names Dan Liu and Jilin Qiu. (Doc. 139-4 at 2.) Both were filed years after Olivares's employment ended, and Olivares alleges no communication with either named inventor about either design. (SAC ¶¶ 1, 14, 28.)

Second, the only features Olivares identifies—a "distinct curve at the top of the 'egg'" and a "thicker and longer tail"—are features he alleges are "embodied in" the D'980 patent (SAC ¶¶ 26–27), which issued on July 25, 2017 and is cited on the face of both challenged design patents (Doc. 139-4 at 2; Doc. 139-5 at 2). For the reasons discussed above, features already disclosed in a 2017 patent cannot, absent

collaboration, constitute a contribution to the conception of designs created years later by others. *Eli Lilly*, 376 F.3d at 1362.

Third, Olivares does not allege that he contributed to the conception of the designs actually claimed. Each design patent claims a single overall ornamental design: "[t]he ornamental design for an adult toy, as shown and described" (Doc. 139-4 at 2), and "the ornamental design for a massager, as shown and described" (Doc. 139-5 at 2). Olivares alleges only that each patent "incorporates the top of the body and tail" of a product (SAC ¶¶ 52, 59), a description that covers essentially the entire device and says nothing about who conceived the particular overall appearance claimed in either patent, or when. What Olivares pleads is a feature set that has been public since 2017; he says nothing about conceiving the overall appearance that each later patent actually claims. This motion does not require the Court to compare any design; it is enough that Olivares pleads no facts showing that he conceived the claimed designs.

Fourth, Count V's only specific allegation does not concern the D'069 patent at all: it states that "the design claimed by U.S. Patent No. D1,047,209 contains the exact distinct curve and displays a long thick tail invented by Olivares." (*Id.* ¶ 59.) Count V therefore contains no factual allegation about the design it purports to challenge.

### III. Counts I Through V Repeat the Allegations the Court Already Held Insufficient and Do Not Cure the Deficiencies Identified in Doc. 135.

Independently, Counts I through V should be dismissed because they do not cure the very deficiencies on which the Court dismissed their predecessors. In Doc. 135, the Court held that Olivares's prior inventorship counts "misse[d] the mark" because they "merely list the patent number without providing any description as what the actual invention is"; did not "go beyond identifying the claim numbers or providing two- or three-word labels as to what they were"; did "not explain how those claims or contributions were vital to the inventions' creations"; and left "the Court guessing as to what the invention even was." (Doc. 135 at 11–12.) Because the Court could not "understand how the purported co-inventor actually contributed" to the inventions, it could not "conclude that a co-inventorship claim is plausible." (*Id.* at 12 (*quoting Illumina, Inc. v. Guardant Health, Inc.*, No. CV 22-334-GBW-CJB, 2023 WL 1407716, at *5 (D. Del. Jan. 31, 2023)).)

The Second Amended Counterclaim does not cure these deficiencies; it repeats them. The claim-by-claim allegations of Counts I through III are copied verbatim from the pleading the Court dismissed. *Compare* Doc. 124 ¶ 39 ('948 patent: "Claim 1, including without limitation the stimulation device, memory device, and processor functionality elements thereof; Claims 2-7, which are dependent on Claim 1; Claim 8, including without limitation the receiving and

initiating steps thereof; Claim 16, including without limitation the stimulation device memory device, and processor functionality elements thereof; and Claims 17-18, which are dependent on Claim 16"), *with* SAC ¶ 31 (same); *compare* Doc. 124 ¶ 46 ('340 patent: "Claims 1-6, 8-12, 14-15, 17-18, and 20, including without limitation all elements or (as applicable) steps thereof"), *with* SAC ¶ 38 (same); *compare* Doc. 124 ¶ 53 ('248 patent: "Claim 1, including without limitation the stimulation device, processor functionality, and user interface functionality elements thereof; Claim 4, including all elements thereof; Claim 8, including without limitation the control link and stimulation device functionality as well as the establishing step, the activating and displaying step, and the receiving steps"), *with* SAC ¶ 45 (same). These are the same "claim numbers" and "two- or three-word labels" the Court has already held insufficient. (Doc. 135 at 11.)

The only change to Counts I through III is the lead-in. Where Olivares previously alleged that he "contributed at least to the following claims of the patent" (Doc. 124 ¶¶ 39, 53), he now alleges that each patent "includes claims which describe and/or incorporate the 'link for live control' system of a sex toy which, as described above, was invented by Olivares" (SAC ¶¶ 31, 38, 45). Swapping one conclusory label for another does not describe "what the actual invention is," what Olivares "brought to the table," or "how it tied into the overall patent." (Doc. 135 at 11.) Counts IV and V fare no better. Olivares previously

alleged that he "contributed at least to the top of the body and tail of the claimed design" (Doc. 124 ¶¶ 60, 67), an allegation Lovense showed was a "bare assertion, without any factual detail regarding when, how, or in what manner Olivares conceived of the design elements" (Doc. 130 at 13–14). He now alleges that each design "incorporates the top of the body and tail." (SAC ¶¶ 52, 59.) That is the same "two- or three-word label[]" in different words. (Doc. 135 at 11.)

Nor do the new general allegations fill the gap. (*See* SAC ¶¶ 20–28) They describe Olivares's role in commercial strategy and in the subject matter of the earlier '515 and D'980 patents, on which he is already named as a co-inventor. (SAC ¶¶ 9, 20–27.) As Lovense explained in its prior motion, allegations of general involvement in "the development, design, and commercialization of multiple products" describe "involvement in product development and marketing—not the conception of patentable subject matter claimed in the five patents at issue." (Doc. 130 at 13.) And Olivares's status as a named inventor on the '515, '458, '064, and '328 patents (SAC ¶ 9) shows that when he contributed to the conception of an invention during his employment, he was credited as an inventor. (Doc. 130 at 13–14.) The new paragraphs simply relabel those earlier, credited contributions as the basis for inventorship of different patents filed years after he left (SAC ¶ 28). This theory, as shown in Sections I and II above, fails as a matter of law. Olivares had the benefit of both Lovense's prior motion and the Court's order identifying

precisely what was missing, and he still did not supply it. Counts I through V should be dismissed with prejudice. *Foman v. Davis*, 371 U.S. 178 (1962); *Carvel v. Godley*, 404 F. App'x 359, 361 (11th Cir. 2010); *Skyles v. McCoy*, 730 F. App'x 769, 771 (11th Cir. 2018).

Finally, dismissal at the pleading stage is the safeguard Rule 8 requires in this context. The named inventors of an issued patent are presumed correct. (Doc. 135 at 10.) If a former employee could proceed to discovery on a § 256 claim simply by alleging that later patents "incorporate" subject matter from an earlier, published patent on which he is named, without pleading collaboration with the named inventors or a contribution to the inventive features that made the later claims patentable, then any inventor of prior art could subject every later patentee who builds on publicly available work to burdensome inventorship litigation. Rule 8 forecloses that result. It "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678–79; *see Twombly*, 550 U.S. at 558–59 (recognizing that the expense of discovery counsels against allowing deficiently pleaded claims to proceed). Courts therefore act as gatekeepers and dismiss § 256 claims where the claimant fails to plead collaboration with the named inventors as well as a specific contribution to conception. *See Blackhawk*, 589 F. Supp. 3d at 1126–27; Doc. 135 at 12 (collecting cases, including *Opternative, Inc. v. Jand, Inc.*, No. 17 Civ. 6936 (JFK), 2018 WL

3747171, at *9 (S.D.N.Y. Aug. 7, 2018), and *Beco Dairy Automation, Inc. v. Glob. Tech Sys., Inc.*, No. 1:12-CV-01310 LJO, 2015 WL 925588, at *5 (E.D. Cal. Mar. 3, 2015)); *see also Vanderbilt*, 601 F.3d at 1303 (explaining that each co-inventor must "engage with the other co-inventors to contribute to a joint conception"). The same result should follow here.

### IV. The Accounting, Constructive-Trust, and Disgorgement Relief in Prayer (c)–(d) Should Be Dismissed or, Alternatively, Stricken[3].

Prayer (c) seeks "an accounting and the imposition of a constructive trust over the total revenue derived by Lovense from any products utilizing the Lovense patents for which Olivares was omitted as a co-inventor," and prayer (d) seeks "disgorgement of all profits derived by Lovense from the use of" those patents. (SAC at 30.) Because this relief has no legal basis on the claims pleaded, Lovense challenges it under Rule 12(b)(6) or, alternatively, under Rule 12(f). The relief fails for two independent reasons.

First, Section 256 provides only one remedy: the court "may order correction of the patent," and "the Director shall issue a certificate accordingly." 35 U.S.C. § 256(b). It does not authorize an accounting, a constructive trust, or disgorgement.

---

[3] *Wiegand v. Royal Caribbean Cruises Ltd.*, 473 F. Supp. 3d 1348, 1351 (S.D. Fla. 2020) *quoting Lopez v. Wachovia Mortg.*, No. 209-CV-01510-JAM-DAD, 2009 WL 4505919, at *5 (E.D. Cal. Nov. 20, 2009) (internal quotations omitted) ("[A] motion to strike may be used to strike any part of the prayer for relief when the recovery sought is unavailable as a matter of law."); *see also Paylan v. Teitelbaum*, No. 1:15-CV-159-MW-GRJ, 2016 WL 7974824, at *2, FN 1-3 (N.D. Fla. Dec. 22, 2016), report and recommendation adopted, No. 1:15CV159-MW/GRJ, 2017 WL 359198 (N.D. Fla. Jan. 24, 2017).

The Court has dismissed Olivares's fraudulent-inducement counterclaim with prejudice as time-barred (Doc. 135 at 3–5, 15), and no remaining count supplies any substantive basis for an equitable money remedy tied to the patents or for a trust over the patents themselves. As such, whether Counts I through V are dismissed or not, there is no basis for this requested relief and it should be dismissed or stricken.

Second, and in the alternative, even a co-inventor has no right to the relief Olivares demands. By statute, "[i]n the absence of any agreement to the contrary, each of the joint owners of a patent may make, use, offer to sell, or sell the patented invention within the United States . . . without the consent of and without accounting to the other owners." 35 U.S.C. § 262. Olivares pleads no agreement to the contrary. Prayer (c)–(d) should therefore be dismissed or stricken.

### V. **Dismissal Should Be With Prejudice.**

Leave to amend under Rule 15(a)(2) may be denied where there has been "repeated failure to cure deficiencies by amendments previously allowed" or where amendment would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001). Both grounds apply. This is Olivares's third counseled pleading of these claims. Lovense's prior motion identified deficiencies (Doc. 130 at 11–15), the Court agreed and explained what was missing (Doc. 135 at 9–12), and the Court granted leave to replead (*id.* at 15).

Olivares responded by repeating the dismissed allegations nearly verbatim. *See* Section III, *supra*. More fundamentally, the dispositive facts cannot change: Olivares left Lovense in 2017; the ’515 and D’980 patents issued in 2017; and the challenged patents were filed by others between 2021 and 2024. (SAC ¶¶ 1, 14; Docs. 139-1 to 139-5.) No additional allegation can create collaboration and contribution to the challenged inventions that did not occur.

## CONCLUSION

For these reasons, Lovense respectfully requests that the Court dismiss Counts I through V of the Second Amended Counterclaim with prejudice, dismiss or strike paragraphs (c) and (d) of the prayer for relief, and grant such further relief as the Court deems just and proper.

Dated: November 9, 2026

Respectfully submitted,

RIMÔN, P.C.

*/s/ Tara L. Humma*

Tara L. Humma, Esq. (*admitted pro hac vice)*
**Rimon, P.C.**
2929 Arch Street, Suite 1700
Philadelphia, PA 19104
Telephone: (215) 915-2111
tara.humma@rimonlaw.com

Ricardo A. Ampudia, Esq., B.C.S.
FL Bar No. 124293
**Rimon, P.C.**

333 SE 2nd Avenue, Suite 2000
Miami, FL 33131
Telephone: (305) 968-1148
ricardo.ampudia@rimonlaw.com

Keith D. Munson
FL Bar No. 935920
**Rimon, P.C.**
220 North Main Street, Suite 500
Greenville, SC 29601
Telephone: (864) 249-7111
keith.munson@rimonlaw.com

*Attorneys for Plaintiffs/Counter-Defendants*

**Local Rule 3.01(g) Certification**

Undersigned counsel for Plaintiffs/Counter-Defendants certifies that she conferred with counsel of record for Defendant/Counter-Claimant regarding this motion and that the parties have been unable to resolve the issues presented by the motion.

*/s/ Tara L. Humma*

Tara L. Humma, Esq. (*admitted pro hac vice)*
**Rimon, P.C.**
2929 Arch Street, Suite 1700
Philadelphia, PA 19104
Telephone: (215) 915-2111
tara.humma@rimonlaw.com

*Attorneys for Plaintiffs/Counter-Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 9, 2026, a copy of the foregoing was filed through the CM/ECF filing portal, with a copy sent to all counsel of record.

*/s/ Tara L. Humma*

Tara L. Humma, Esq. (*admitted pro hac vice)*
**Rimon, P.C.**
2929 Arch Street, Suite 1700
Philadelphia, PA 19104
Telephone: (215) 915-2111
tara.humma@rimonlaw.com

*Attorneys for Plaintiffs/Counter-Defendants*